## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAN KIM, YONG KIM, YONG HWA CHUNG KIM, CHUNG KOOK KIM, DANI BUTLER, BRIAN ERDSTEIN, KARENE ERDSTEIN, MAYAN ERDSTEIN, CHAIM KAPLAN, RIVKA KAPLAN, REUVEN KAPLAN, THEODORE GREENBERG, MAUREEN GREENBERG, JARED SAUTER, DVORA KASZEMACHER, CHAYA ALKAREIF, CHAYIM KUMER; LAURIE RAPPEPORT, MARGALIT RAPPEPORT, AVISHAI REUVANE, and ELISHEVA ARON, <br><br> *Plaintiffs*, <br><br> v. <br><br> RAILGUN DAO, <br><br> *Defendant*. | Case No. 1:26-CV-00179-SLS |

## NON-PARTY DIGITAL CURRENCY GROUP, INC.'S
## MOTION TO QUASH SERVICE OF PROCESS
## <u>PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 4(H)(1) AND 4(L)</u>

## TABLE OF CONTENTS

**Page**

MOTION ................................................................................................................................... 1

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

METHODS OF SERVICE ........................................................................................................ 6

I.     Method 1: Service Following Applicable State Law ........................................................ 6

II.    Method 2: Service Through an Officer or Managing or General Agent ........................... 7

ARGUMENT ............................................................................................................................ 7

I.     Non-Party DCG Was Improperly Served under D.C., Connecticut, and Federal Law ...... 8

II.    Non-Party DCG Should Not Be Bound by Any Default Judgment Issued against
       Railgun ......................................................................................................................... 13

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14th RMA Partners, L.P. v. Reale*,
  100 F.3d 278 (2d Cir. 1996)..........................................................................................14

*Ali v. Mid-Atl. Settlement Servs., Inc.*,
  233 F.R.D. 32 (D.D.C. 2006)...........................................................................................11

*Callahan v. iCare Health Network*,
  2023 WL 2988889 (D. Conn. Apr. 18, 2023)........................................................ 8-9

*Chambers v. Grand Haven*,
  2024 WL 4028368 (W.D. Mich. Aug. 21, 2024)............................................... 12-13

*Foster, Murphy, Altman & Nickel, PC v. Ascletis Pharma, Inc.*,
  2024 WL 5186614 (D.D.C. Dec. 20, 2024)....................................................................12

*G&G Closed Cir. Events, LLC v. Narine*,
  2021 WL 7906548 (E.D.N.Y. Dec. 13, 2021) ..............................................................12

*Godson v. John Hopkins Med.*,
  2024 WL 2208196 (D.D.C. May 15, 2024)...................................................................10

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017)..........................................................................................................14

*James v. Booz-Allen & Hamilton, Inc.*,
  206 F.R.D. 15 (D.D.C. 2002)..........................................................................................10

*Kumer v. Hezbollah*,
  2020 WL 6146622 (E.D.N.Y. Oct. 20, 2020)...............................................................11

*Mann v. Castiel*,
  681 F.3d 368 (D.C. Cir. 2012).........................................................................................13

*Marine Wholesale & Warehouse Co. v. United States*,
  315 F. Supp. 3d 498 (D.D.C. 2018) ...................................................................................8

*Prescription Containers, Inc. v. Cabiles*,
  2014 WL 1236919 (E.D.N.Y. Feb. 14, 2014)....................................................... 11-12

*Serv. Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs., Inc.*,
  415 F. Supp. 3d 29 (D.D.C. 2019) .................................................................................14

*Skewes-Cox v. Georgetown Univ. L. Ctr.*,
  2025 WL 1099211 (D.C. Cir. 2025)...............................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*\*Stallard v. Goldman Sachs Grp., Inc.*,
  2022 WL 59395 (D.D.C. Jan. 6, 2022)............................................................................8, 12

*United States v. Ziegler Bolt & Parts Co.*,
  111 F.3d 878 (Fed. Cir. 1997)...............................................................................................8

*Whitehead v. CBS/Viacom, Inc.*,
  221 F.R.D. 1 (D.D.C. 2004)...................................................................................................8

*Williams v. GEICO Corp.*,
  792 F. Supp. 2d 58 (D.D.C. 2011) ......................................................................................11

*\*Winston & Strawn LLP v. L. Firm of John Arthur Eaves*,
  47 F. Supp. 3d 68 (D.D.C. 2014) ........................................................................................11

**Statutes and Rules**

Conn. Gen. Stat.
  § 52-57(a)..............................................................................................................................10
  § 52-57(c)................................................................................................................................7
  § 52-57(d)................................................................................................................................7

D.C. Code
  § 29-104.12(c).........................................................................................................................7
  § 29-603.01 .............................................................................................................................7
  § 29-603.03 .............................................................................................................................7

D.C. Superior Court Civil Rule
  4(e)(1) .....................................................................................................................................6
  4(h)(1) .................................................................................................................................6, 10

Fed. R. Civ. P.
  4(a)(1)(B) ..............................................................................................................................10
  4(h)............................................................................................................... 1, 6-7, 10-11
  4(*l*).....................................................................................................................................1, 6

**MOTION**

Non-Party Digital Currency Group, Inc. ("DCG") respectfully moves this Court pursuant to Federal Rules of Civil Procedure 4(h)(1) and (*l*) to quash Plaintiffs' purported service of process on DCG in connection with its second request for clerk's entry of default against the only named defendant, Railgun DAO. DCG appears solely for the limited purpose of seeking the relief requested. DCG is not appearing on behalf of Railgun DAO and does not speak for or represent it in this or any other proceeding. By filing this motion, DCG does not waive, and expressly reserves, any and all defenses available to it, including but not limited to defenses based on lack of personal jurisdiction and improper venue. DCG has attached a proposed order to this motion.

**INTRODUCTION**

Plaintiffs in this case seek to hold North Korea and the Lebanese terrorist organization Hezbollah accountable for perpetrating horrific crimes against them and their loved ones by requesting a default judgment against Railgun DAO, the solely named defendant in this case, for allegedly helping to facilitate those crimes. DCG, a longstanding and leading U.S.-based cryptocurrency investment company, expresses sympathy for Plaintiffs' desire for restitution and strongly condemns these crimes, which it had absolutely nothing to do with.

DCG is not named as a defendant in the complaint, nor does the complaint allege that DCG participated in, or assisted North Korea or Hezbollah in any way with, perpetrating any crime against anyone. Rather, the complaint contains bare-bones allegations that DCG is an investor and partner in Railgun DAO. And it is Railgun DAO, an alleged U.K.-based general partnership and provider of "crypto mixing" services, that hackers connected to the North Korean government purportedly used to launder and steal digital assets in 2022 and 2025 from innocent third parties.

When Railgun DAO failed to answer or otherwise respond to the complaint, Plaintiffs sought an entry of default against it. And in their second request (filed after this Court rejected

1

their first one), Plaintiffs falsely assert that they properly served DCG, who they claim is a partner in Railgun DAO.  Plaintiffs attached a proof of service form for DCG that is riddled with typographic and substantive errors (like claiming service was attempted on one day when it was actually on a different day) and fails to provide this Court with adequate proof that DCG was properly served.

Even if Plaintiffs cured this improper service, their efforts to serve DCG are troubling, misguided, and have no legal effect.  DCG is not a named party to this litigation.  So it is unclear why Plaintiffs tried to serve DCG with the complaint in the first place, or what service—even if properly effected—would accomplish.  Plaintiffs' misrepresentations about service on DCG raise serious concerns that if Plaintiffs obtain a default judgment against Railgun DAO, they will attempt to enforce that judgment against DCG in subsequent litigation by arguing that DCG is collaterally estopped from challenging the merits of the complaint, even though DCG has not been named in this suit, has not been properly served here, and is not a general partner to Railgun DAO (even if it is a partnership).

This Court should (1) quash the claim of service on DCG; (2) not permit Plaintiffs to engage in any further service attempts of the summons and complaint on DCG because DCG is not a party; and (3) make clear that any default judgment entered against Railgun DAO has no application to DCG—an unnamed, unserved, and uninvolved non-party in the pending litigation.

## BACKGROUND

Plaintiffs are judgment holders against North Korea and the Lebanese terrorist organization Hezbollah, which committed horrific crimes against Plaintiffs or their loved ones.[1]  (ECF No. 1 ("Compl.") ¶¶ 1-2.)

---

[1] The allegations discussed in this motion are drawn from those in Plaintiffs' complaint and other filings in this action, which are assumed true solely for purposes of this motion.

2

DCG is a leading cryptocurrency industry investor. Investing since 2012 and headquartered in Stamford, Connecticut, DCG maintains an expansive investment portfolio in the cryptocurrency industry spanning over 200 equity investments, 50 plus fund investments, and 30 plus digital asset and token investments.[2] DCG is not named as a defendant in this case. (*See* Compl. ¶¶ 7-9, 63.)

On January 21, 2026, Plaintiffs filed this action alleging claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and for negligence against a single defendant: Railgun DAO. (*Id.* ¶¶ 4, 115-131.) Railgun DAO is alleged to be a U.K.-based entity that utilizes its smart contracts to provide "crypto mixing service[s]" that enable users to transact in a way that makes it impossible to discern the source of the transacted assets. (*Id.* ¶¶ 9, 50-51.)

The complaint alleges that in 2022 and 2025, the Lazarus Group, a hacking collective that functions as an arm of the North Korean government, looted hundreds of millions of dollars in digital crypto assets from third parties—entities not affiliated with Plaintiffs, Railgun DAO, or DCG. (*Id.* ¶¶ 5, 87-88.) The complaint further alleges that these hackers subsequently utilized Railgun DAO's crypto mixing services in an attempt to conceal the sources of these assets. (*Id.* ¶¶ 88, 111-112.) Railgun DAO purportedly failed to freeze these stolen assets on its platform— assets Plaintiffs claim should have been available to satisfy the judgments they had obtained against North Korea and Hezbollah, notwithstanding that these assets allegedly belong to third-party hacking victims, not to North Korea or Plaintiffs. (*Id.* ¶¶ 89, 91-92, 113-114.) The complaint also alleges that Railgun DAO is a partnership with its headquarters in London or without a fixed headquarters. (*Id.* ¶¶ 9, 70-73, 121-122.)

---

[2] DCG, https://perma.cc/6JMW-7ZAH (last visited April 17, 2026).

DCG is mentioned in the complaint only in passing.  It is alleged simply to be an investor in the sole named defendant in this case—Railgun DAO.  (*Id.* ¶ 72.)  The complaint alleges that in 2022, DCG purchased $10 million in RAIL tokens from Railgun DAO.  (*Id*. ¶ 63.)  RAIL tokens, such as those DCG purportedly acquired, are allegedly the "governance tokens" for Railgun DAO, meaning that tokenholders are able "to suggest actions that the associated DAO will take" and vote on those suggestions.  (*Id*. ¶ 42.)  The complaint further alleges that because DCG owns RAIL tokens, it is a partner of Railgun DAO.  (*Id.* ¶¶ 42, 91, 107.)

On January 29, 2026, Plaintiffs filed a motion to serve Railgun DAO through alternative means.  (ECF No. 4.)  Despite having identified DCG as an alleged partner of Railgun DAO in the complaint, Plaintiffs' motion stated that "DAOs cannot be served using the procedures for general partnerships or unincorporated associations because they lack a physical headquarters and their officers and directors are pseudonymous."  (*Id.* at 2.)  Plaintiffs therefore sought permission to serve Railgun DAO through three alternative means.  (*Id.* at 6.)  Notably, in that motion for alternative service, Plaintiffs did not argue—and did not represent to this Court—that Railgun DAO could be served through DCG as an alleged partner.

This Court granted the motion, and Plaintiffs allegedly served Railgun DAO through alternative means.  (ECF Nos. 7 and 10.)  On February 12, 2026, Plaintiffs filed a certificate of service on Railgun DAO that made no mention of any service on or through DCG.  (ECF No. 10.)

After Railgun DAO did not respond to the complaint within the allotted time, Plaintiffs filed a request for entry of default on March 18, 2026.  (ECF No. 11.)  The request stated that they had served Railgun DAO in the manner authorized by this Court in its previous order, and they attached an affidavit affirming that Railgun DAO was served.  (*See* ECF Nos. 11 at 1 and 11-1.)  The request also stated, for the first time, that "on February 23, 2026, Plaintiffs effected service on

4

[DCG], which is alleged to be a partner in Railgun DAO." (ECF No. 11 at 1.) Plaintiffs attached a document entitled "Proof of Service" that supposedly confirms service of the complaint on DCG. (ECF No. 11-2 (attached to this motion as Exhibit A).) As discussed below (*infra* Section I), this Proof of Service contained numerous fatal defects.

On March 24, 2026, this Court denied Plaintiffs' request for entry of default, concluding that the February 12 return of service did not sufficiently demonstrate service through the Court-authorized alternative means. (Mar. 24, 2026 Min. Order.) This Court did not address the alleged service on DCG in its order. (*Id.*)

On March 25, 2026, Plaintiffs filed a second request for entry of default. (ECF No. 12.) In that request, Plaintiffs claimed that they served Railgun DAO via the Court-ordered alternative methods and attached a supplemental affidavit and multiple documents to show how service was effectuated. (ECF Nos. 12 at 1 and 12-1.) As with the first default request, Plaintiffs declared that they had served DCG on February 23, 2026, as an alleged "partner in Railgun DAO" and attached another "Proof of Service." (ECF Nos. 12 at 1 and 12-2 (attached to this motion as Exhibit B).) But the second Proof of Service did not correct the material defects in the prior one (*infra* Section I) and, in fact, is based on demonstrably false information like the first one.

Plaintiffs' actual service attempt on DCG was very different from what is described in either Proof of Service. On February 25, 2026 (not February 23 as Plaintiffs claim in their filings or February 24 as noted in both Proofs of Service), the process server came to DCG's lobby at its Stamford, Connecticut headquarters and tried to serve DCG. (Declaration of Aristos Papadacos ("Papadacos Dec.") ¶ 3.) A DCG employee, who is the Vice President of Corporate Security, came to the lobby to meet with the process server. (*Id.* ¶¶ 1, 3.) The process server claimed that the defendants were employees of DCG and provided two or three names to the DCG employee,

although neither DCG nor any of its subsidiaries were named as a defendant in the process server's documents. (*Id.* ¶¶ 4-5.) The employee conducted a check of DCG's internal database while the process server was waiting, and none of the names the process server provided were found in the database. (*Id.* ¶ 5.) The process server did not ask the employee for any identifying information, such as his name and position. (*Id.* ¶ 7.) After the DCG employee confirmed that none of the names were DCG employees, the process server left without leaving any documents for DCG and did not mail any documents to DCG's Stamford headquarters at a later time. (*Id.* ¶¶ 5, 8-9.) DCG also has not received any documents through its registered agent in Delaware.

On April 10, 2026, the Clerk of the Court entered default against Railgun DAO. (ECF No. 13.)

**METHODS OF SERVICE**

The Federal Rules of Civil Procedure outline two methods for serving a corporation or partnership within the United States: (1) properly serving the entity under applicable state law (which is D.C. or Connecticut here); or (2) directly serving certain officers or agents of the corporation or partnership.[3] *See* Fed. R. Civ. P. 4(h)(1). Regardless of which method of service is used, "proof of service must be made to the court . . . by the server's affidavit." Fed. R. Civ. P. 4(*l*).

## I.     Method 1: Service Following Applicable State Law

**District of Columbia:** Under D.C. Superior Court Civil Rules 4(e)(1) and (h)(1), a corporation or partnership may be served by (1) "following District of Columbia law," (2) following "the state law . . . in the state where service is made," or (3) "delivering a copy of

---

[3] Again, DCG's position is that it is *not* a partner of Railgun DAO. In any event, whether Plaintiffs attempted service on DCG as an alleged partner of Railgun DAO or as a separate entity, service would need to be effectuated in compliance with Rule 4(h)(1).

6

the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." D.C. law similarly permits service "by handing a copy of the process, notice, or demand to an officer of the entity, a managing or general agent of the entity, or any other agent authorized by designation or by law to receive service of process for the entity." D.C. Code § 29-104.12(c). Each partner is "an agent of the partnership for the purpose of its business" except where limited in a statement of partnership authority. *Id.* §§ 29-603.01, 29-603.03.

**Connecticut:** Connecticut law requires service on a general partnership through "any one of the partners" within the state. Conn. Gen. Stat. § 52-57(d). If an alleged partner is a corporation (or if trying to serve a corporation in general), then the corporation must be served through "the president, the vice president . . . or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located." *Id.* § 52-57(c).

## II.    Method 2: Service Through an Officer or Managing or General Agent

The second method for service under Rule 4(h)(1) permits service on a corporation or partnership "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B).

## ARGUMENT

Plaintiffs failed to serve DCG under D.C., Connecticut, or federal law. Service should therefore be quashed, and Plaintiffs should not be permitted to try to re-serve DCG.

7

Where, as here, "sufficiency of service is challenged, the burden is on the plaintiff to demonstrate that service has been properly effected." *Marine Wholesale & Warehouse Co. v. United States*, 315 F. Supp. 3d 498, 509 (D.D.C. 2018). And when "a process server serves a purported corporate [party], the plaintiff also bears the burden of showing that the recipient was authorized to accept process, or that the process server had cause to believe that the party was authorized to receive service." *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, at *2 (D.D.C. 2004). Plaintiffs have not met that burden. Plaintiffs' second Proof of Service—like the first one—is facially deficient and provides no basis from which this Court can conclude that an authorized agent of DCG received the required documents. Moreover, Plaintiffs never explain why DCG, which is not named as a defendant, was served at all; they mention DCG only in passing in their request for entry of default. That cursory reference—together with the passing allegations in the complaint—raises grave concerns that Plaintiffs are using their alleged service on DCG as a basis to attempt to estop it from challenging the merits of Plaintiffs' claims in subsequent collection proceedings. If that is Plaintiffs' intent, this Court should not countenance such a strategy. This motion to quash should be granted, and any default judgment entered against Railgun DAO should make clear that DCG is not bound by the terms of that judgment.

## I. Non-Party DCG Was Improperly Served under D.C., Connecticut, and Federal Law

Plaintiffs have failed to provide the basic facts and circumstances necessary to establish the validity of service under D.C., Connecticut, or federal law. In fact, the Proofs of Service that Plaintiffs have provided to this Court are riddled with typographic and substantive errors.

All three jurisdictions require that a proof of service supply sufficient "facts and circumstances showing the proper relationship between the defendant and its alleged agent." *Stallard v. Goldman Sachs Grp., Inc.*, 2022 WL 59395, at *7 (D.D.C. Jan. 6, 2022) (quoting *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997)); *see also Callahan v. iCare*

*Health Network*, 2023 WL 2988889, at *3 (D. Conn. Apr. 18, 2023) (concluding improper service when plaintiff did not "provide[] evidence that she served any of the alternative persons listed in" the statute).  Because the relevant Proof of Service here provides none of that information, Plaintiffs have failed to shoulder this burden.

The first Proof of Service submitted on March 18 reflects that the summons was addressed to someone named Bruce Eastwood (apparently the process server himself) and was received by Eastwood on February 23, 2026.  (Ex. A.)  The Proof of Service next states that, one day later, on February 24, the summons was left at Eastwood's residence or usual place of abode with a "John Doe, who refused name, employee/authorized for service" and that Eastwood subsequently mailed a copy of the summons to Eastwood's last known address.  (*Id.*)  Eastwood declared under penalty of perjury that this information was true, signing his name and listing his address as "Stemford [sic], CT."  (*Id.*)  In other words, Plaintiffs filed a sworn document stating that the process server served himself at a "residence" (not a business) by leaving the summons (which was addressed to himself) with someone else whose name is unknown.  Compounding these problems, the process server also got his purported date of service wrong because his attempted service actually took place on February 25, not February 24, and DCG never received anything in the mail from him at its Stamford headquarters.  (Papadacos Dec. ¶ 9.)  Nor has DCG received any such documents through its registered agent in Delaware.

The second Proof of Service submitted on March 25 is equally deficient.  It was altered to change the name of the person to whom the summons was addressed from "Bruce Eastwood" to "Digital Currency Group, Inc."  (Ex. B.)  But it otherwise reflects no other changes, including to the alleged date of service, that the summons was left at a residence (not a business) with a "John Doe," and that the process server's address was in "Stemford [sic], CT."  (*Id*.)  That said, Eastwood

9

again signed this Proof of Service, which is backdated to February 25, 2026—even though Eastwood could not have signed it on that date (given that it was altered a month later).  (*See id.*)  Tellingly, the one nominal correction to the name on the summons cannot possibly be correct for two reasons.  First, the docket sheet for this action reflects that only one summons was issued, and that was directed to the sole defendant, Railgun DAO.  (*See* Docket, ECF No. 9 ("SUMMONS (1) Issued Electronically as to RAILGUN DAO.").)  Second, a proper summons under Rule 4 "must . . . be directed to the defendant," but DCG is not a defendant in this action.  *See* Fed. R. Civ. P. 4(a)(1)(B).

Plaintiffs failed to properly serve non-party DCG.  As a threshold matter, Plaintiffs are required to "deliver[] a copy of the summons *and of the complaint* to" a qualified individual.  Fed. R. Civ. P. 4(h)(1)(B) (emphasis added); *see also* D.C. Sup. Ct. Civ. R. 4(h)(1)(B) (requiring "copy of the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court"); Conn. Gen. Stat. § 52-57(a) (requiring "the declaration or complaint").  The second Proof of Service here references only the "summons"—with no mention of the complaint or any other required document.  (Ex. B.)  That omission alone is fatal.  *See James v. Booz-Allen & Hamilton, Inc.*, 206 F.R.D. 15, 18 (D.D.C. 2002) ("The court is unwilling to construe 'summons' to mean 'summons and complaint.' . . .  Therefore, the court must view the plaintiff's conclusory claim of having effected proper service as unsupported by the process server's affidavit."); *see also Godson v. John Hopkins Med.*, 2024 WL 2208196, at *3 (D.D.C. May 15, 2024) (concluding reference to only "Initial Filing" was "no[t] evidence that both the summons and complaint were included").  Moreover, as noted above, Plaintiffs could not deliver a summons to DCG because the summons must be directed to a defendant, and DCG is not a defendant.

10

The deficiencies do not end there.  Plaintiffs have also failed to provide sufficient evidence from which this Court could conclude that "an officer, a managing or general agent, or any other agent authorized by appointment or by law" received the summons.  Fed. R. Civ. P. 4(h)(1)(B). "[S]ervice [on a managing or general agent] is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable, and just to imply the authority on his part to receive service." *Winston & Strawn LLP v. L. Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 74 (D.D.C. 2014); *see also Kumer v. Hezbollah*, 2020 WL 6146622, at *2 (E.D.N.Y. Oct. 20, 2020) ("The phrase 'managing or general agent' does not refer to any agent of the corporation, but one who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise. . . . Managing or general agent is a term of art with a narrower meaning than just agent.") (internal marks and citations omitted).  Conversely, "[d]elivering a summons and complaint to a corporate representative who is not an officer, a managing or general agent, or an agent authorized to accept service fails to satisfy the requirements of Rule 4(h)." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 65 (D.D.C. 2011).  "Whether service is effective turns on the facts and circumstances of each case." *Ali v. Mid-Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 35 (D.D.C. 2006).  But it is insufficient for the process server to fail to ascertain the title or corporate position of the individual who accepted the papers, or fail to inquire whether that individual was actually an employee of DCG.  *Prescription Containers, Inc. v. Cabiles*, 2014 WL 1236919, at *7 (E.D.N.Y. Feb. 14, 2014); *see also Skewes-Cox v. Georgetown Univ. L. Ctr.*, 2025 WL 1099211, at *2 (D.C. Cir. 2025) (explaining it is "[in]sufficient to show merely that the summons and complaint have arrived at the office of the entity served or were received by an employee not authorized to accept service of process").

The second Proof of Service identifies the alleged recipient as "John Doe"—described as an "employee/authorized for Service"—with no title, no corporate position, and no other information from which this Court could assess whether that individual in fact had authority to accept service on DCG's behalf. (Ex. B.) Courts have made clear that a title or position is necessary for the Court to make even a threshold inference of proper authority. *Foster, Murphy, Altman & Nickel, PC v. Ascletis Pharma, Inc.*, 2024 WL 5186614, at *2 (D.D.C. Dec. 20, 2024) ("The court may consider an individual's title and whether it suggests on its face that the individual is an officer or agent."); *see also Stallard*, 2022 WL 59395, at *5 ("Any agent who accepts service must be shown to have been authorized to bind his or her principal by the acceptance of process, either explicitly or 'implied in fact.'") (alterations adopted and citation omitted). The bare label "employee/authorized for Service"—asserted by a process server who made no apparent inquiry into the recipient's name, role, or authority—falls well short of that standard. *See Prescription Containers*, 2014 WL 1236919, at *7.

Even setting aside the above deficiencies, the second Proof of Service omits basic information that courts have required to assess the validity of a service event—including the address at which service was made and the time of service. *See G&G Closed Cir. Events, LLC v. Narine*, 2021 WL 7906548, at *3 (E.D.N.Y. Dec. 13, 2021). It merely claims that service was effected at an unknown location by leaving the summons at an "individual's residence or usual place of abode" with "John Doe." (Ex. B.) The date of service—February 24—is also incorrect. (*See* Papadacos Dec. ¶ 3 declaring that the alleged service event occurred on February 25.) And the process server did not leave any documents with DCG or mail the documents at a later time despite affirming that the summons was left at the "residence" and later mailed to the same

12

location.  (*Id.* ¶¶ 8-9; Ex. B.)  These deficiencies reveal that Plaintiffs' representations about properly serving DCG are both incomplete and patently false.

Based on these circumstances, the second Proof of Service on DCG is wholly deficient, and this Court cannot conclude that the requirements of Rule 4 have been satisfied.  *Chambers v. Grand Haven*, 2024 WL 4028368, at *3 (W.D. Mich. Aug. 21, 2024) ("In the absence of such evidence or information, the Court cannot conclude that service was properly accomplished.").  It bears pointing out that Plaintiffs did not even attempt the obvious and easy step of serving DCG at its registered agent in Delaware.

## II.    Non-Party DCG Should Not Be Bound by Any Default Judgment Issued against Railgun

The highly irregular nature of Plaintiffs' alleged "service" on DCG merits serious judicial scrutiny, particularly in the context of a request for default judgment.  Even if DCG were properly served (or Plaintiffs attempt to cure service), it remains unclear why Plaintiffs tried to serve the complaint on DCG at all, and doing so was misguided and problematic.

DCG is not named as a defendant in this action.  (*See* Compl. ¶ 9 (listing Railgun DAO as the only defendant).)  Service of process exists to notify "a defendant of the commencement of an action against him" and to "mark[] the court's assertion of jurisdiction over the lawsuit."  *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012).  Neither purpose applies to a non-party like DCG.  Contrary to Plaintiffs' unsubstantiated assertions, DCG is not a partner of Railgun DAO.  (*See* Compl. ¶¶ 91, 107.)  In any event, DCG disputes that Railgun DAO constitutes a partnership under any applicable law, and nothing in this motion should be construed as an admission that any partnership exists or that DCG is a partner of Railgun DAO.

The oddity of Plaintiffs' approach to service cannot be overstated.  In their motion for alternative service, Plaintiffs represented to this Court that "DAOs cannot be served using the

procedures for general partnerships or unincorporated associations" and that "Railgun DAO cannot be served by any of the other means prescribed by Federal Rule of Civil Procedure 4 or by Superior Court Rule of Civil Procedure 4." (ECF No. 4 at 2-3.) Plaintiffs made no mention of serving DCG as a means of effecting service on Railgun DAO—a representation that was likely material and highly relevant to this Court's decision to permit alternative service. (*See id.*) Only after Railgun DAO failed to respond, and only in their request for entry of default, did Plaintiffs assert that they had "effected service on [DCG], which is alleged to be a partner in Railgun DAO." (ECF No. 11 at 1; *see also* ECF No. 12 at 1.)

Plaintiffs' disclosure of service on DCG appears to be a thinly veiled attempt to pave the way for their eventual argument that any default judgment against Railgun DAO in this case applies to non-party DCG. *Cf. 14th RMA Partners, L.P. v. Reale*, 100 F.3d 278, 280 (2d Cir. 1996) ("[A] judgment creditor of the partnership may institute a suit against an individual partner to hold him liable if the judgment cannot be satisfied out of partnership assets."). To reiterate, DCG firmly contests that this "partnership" framework applies here at all—the predicate assumptions that Railgun DAO is a partnership and that DCG is a general partner in that supposed partnership are precisely the disputed facts that Plaintiffs have never proven and that Railgun DAO's default leaves entirely unresolved.

By manufacturing purported service, Plaintiffs seem to be attempting to create a record of notice that they will later use in an attempt to argue that DCG is collaterally estopped from contesting the merits when Plaintiffs inevitably bring a collection action against DCG as an alleged general partner. To the extent that is their true purpose, then service on DCG is fundamentally improper because it is neither a party nor a partner of Railgun DAO. To that end, DCG respectfully requests that in addition to quashing service, this Court should exercise its inherent authority and

14

preclude Plaintiffs from attempting to serve DCG again. *Serv. Emps. Int'l Union Loc. 32BJ v. Preeminent Protective Servs., Inc.*, 415 F. Supp. 3d 29, 33 (D.D.C. 2019) ("Federal courts possess 'inherent powers, not conferred by rule or statute, to manage their own affairs . . . .'") (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). This is particularly appropriate here where Plaintiffs have submitted multiple false and misleading Proofs of Service and appear to be misusing the judicial system in an effort to bind DCG to a default judgment.

## **CONCLUSION**

For the foregoing reasons, this Court should (1) quash the claims of service on DCG, (2) not permit Plaintiffs to engage in any further service attempts of the summons and complaint on DCG because it is not a party, and (3) make clear that any default judgment entered against Railgun DAO has no application to DCG—an unnamed, unserved, and uninvolved non-party in the pending litigation.

Dated:   April 17, 2026

Respectfully submitted,

COOLEY LLP

*/s/ Raymond P. Tolentino*

Brian E. Klein (CA Bar No. 258486) (*Pro Hac Vice* forthcoming)
350 South Grand Avenue
Suite 3200
Los Angeles, CA  90071
Telephone: +1 213 561 3250
bklein@cooley.com

Raymond P. Tolentino (D.C. Bar No. 1028781)
1299 Pennsylvania Avenue, NW
Suite 700
Washington, D.C. 20004
Telephone: +1 202 842 7800
rtolentino@cooley.com

*Attorneys for Non-Party Digital Currency Group, Inc.*

15